# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## HALL v. STEWART.

### March 15, 1923.

1. HUSBAND AND WIFE—*Funeral Expenses—Expenses of Wife's Last Illness.*—Where a wife dies intestate, possessed of no personal property, and leaving her father as her sole heir, her husband is not entitled to reimbursement from the proceeds of the wife's realty for the expenses of the wife's last sickness and funeral expenses paid by him.

2. HUSBAND AND WIFE—*Funeral Expenses—Common Law.*—At common law, the husband was bound for the funeral expenses of his wife as for necessaries.

3. HUSBAND AND WIFE—*Funeral Expenses—Separate Estate of the Wife.*— Prior to the enactment of our married women's statute, a married woman in this State could own no personal estate, except an equitable separate estate, which was held strictly subject to the settlement, and there was nothing upon which the statutes relating to funeral expenses could operate. Since that enactment, she holds her estate according to the terms of the statute creating it.

4. HUSBAND AND WIFE—*Husband's Duty of Support—Services of Wife— Married Women's Statute.*—Since the enactment of the married women's statute, the husband is still entitled to the services of the wife, and is bound for her support.

5. HUSBAND AND WIFE—*Expenses of Wife's Last Illness—Funeral Expenses—Case at Bar.*—The liability of a husband for the expenses of his wife in her last illness and for her funeral expenses do not stand upon the same footing. The expenses of the last illness are necessaries for which the husband is still bound, and for which the wife is not bound, in the absence of any contract or agreement on her part. And under section 5390 of the Code of 1919 the wife's estate is not liable, as that section applies to debts of the decedent. In the instant case the Supreme Court of Appeals expressed no opinion as to the liability of the estate of the wife for her funeral expenses to the persons furnishing them, if they had asserted their claims against her estate, as that question was not before it. There was a common-law liability on her husband for these expenses, the credit was extended to him, and he paid the debt, and could not recover back the amount from his wife's estate.

6. EXECUTORS AND ADMINISTRATORS—*Debts of Decedent—Funeral Expenses.*—Funeral expenses are not debts of the decedent.

Appeal from a decree of the Circuit Court of Smyth county. Decree for complainant. Defendant appeals.

*Reversed and remanded.*

The opinion states the case.

*S. B. Campbell,* for the appellant.

*J. P. Buchanan* and *J. D. Perkins,* for the appellee.

BURKS, J., delivered the opinion of the court.

[1] C. W. Stewart and Minnie B. Stewart, his wife, jointly owned a house and lot in the town of Marion, Va., acquired by them in 1918. In December, 1920, Mrs. Stewart was taken sick, carried to a hospital, and shortly thereafter died. The expenses of her last sickness and funeral amounted to $468.50, composed of doctor's bills $117.00, hospital and nurses $106.50, undertaker's bills $245.00. All of these bills were charged to and paid by the husband, C. W. Stewart. No issue was ever born of the marriage, and Mrs. Stewart died intestate, possessed of no personal estate, and seized of no real estate except the undivided half interest in the house and lot aforesaid. Her sole heir was her father, C. L. Hall. This suit was brought by C. W. Stewart to the first January rules, 1921, asking a sale of the house and lot aforesaid for the purpose of partition, and that there be refunded to him out of his wife's half of the house and lot the amount paid by him as aforesaid for the expenses of the last sickness and funeral of his wife. The trial court allowed the full amount of the husband's claim, and from the decree making that allowance this appeal was taken.

There is no dispute about the facts, and the sole question presented for decision is, was the allowance proper?

[2] It is generally conceded that, at common law, the husband was bound for the funeral expenses of his wife, but owing largely to differences in the language of the statutes on the subject of funeral expenses and the estates of married women, or the construction put upon the language, there is a lack of harmony in the decisions as to the liability of the husband for the funeral expenses of the wife. The different views taken by the courts are well stated in 15 R. C. L. sec. 248, p. 1214, and the statements of the author are well supported by the cases cited in the notes, all of which we have carefully examined. We give below the text of that section; placing in the text not only the authorities cited in the notes, but other pertinent cases we have examined.

*"Reimbursement of Husband for Wife's Funeral Expenses.*—Where a married woman by her will expressly charges her separate estate with the payment of her funeral expenses, the husband is entitled to reimbursement from such estate in case he has paid such charge. (*In re Skillman,* 146 Iowa, 601, 125 N. W. 343, 140 Am. St. Rep. 295. Notes: 33 L. R. A. 662; 37 L. R. A. [N. S.] 755.) In some jurisdictions the view is taken that although that by the statute a married woman is entitled to the exclusive use and ownership of her separate property, free from any claim or control of her husband, and the husband is not liable for her debts contracted before marriage, yet the husband, as at common law, is bound to pay the wife's funeral expenses, and cannot claim reimbursement therefor out of her estate. (*Smyley* v. *Reese,* 53 Ala. 89, 25 Am. Rep. 598; *Kenyon* v. *Brightwell,* 120 Ga. 606, 48 S. E. 124, 1 Ann. Cas. 169; *Ketterer* v. *Nelson,* 146 Ky. 7, 141 S. W. 409, 37 L.

R. A. [N. S.] 754; *Gallaway* v. *McPherson's Estate*, 67 Mich. 546, 35 N. W. 114, 11 Am. St. Rep. 596. Notes: 32 Am. Rep. 170; 33 L. R. A. 662; 6 L. R. A. [N. S.] 917; 37 L. R. A. [N. S.] 754; 47 L. R. A. [N. S.] 283; 1 Ann. Cas. 172. *Ambrose* v. *Kerrison*, 138 Eng. Reprint 307; *In re Sea*, 11 B. C. 324; *Bowen* v. *Daugherty*, 168 N. C. 242, 84 S. E. 265, Ann. Cas. 1917B, 1161; *Stonesifer* v. *Shriver*, 100 Md. 24, 59 Atl. 139.) In other jurisdictions the view is taken under the general statutes making the funeral expenses a charge against a decedent's estate, and those establishing the independent position of married women with regard to their property, that, as between the estate of a married woman and her husband, the liability of the estate must be regarded as primary, though it is his duty as before to see that his wife is buried, and that if he pays her funeral expenses he is entitled to recover his reasonable expenditures, as in other cases when a person has paid, in pursuance of a legal duty, what, as between himself and another, that other was bound to pay. (*In re Skillman*, 146 Iowa, 601, 128 N. W. 343, 140 Am. St. Rep. 295; *Constantinides* v. *Walsh*, 146 Mass. 281, 15 N. E. 631, 4 Am. St. Rep. 311; *Moulton* v. *Smith*, 16 R. I. 126, 12 Atl. 891, 27 Am. St. Rep. 728. Notes: 33 L. R. A. 662; 6 L. R. A. [N. S.] 917; 37 L. R. A. 283; 47 L. R. A. [N. S.] 755; 1 Ann. Cas. 172. *Schneider* v. *Breier's Estate*, 129 Wis. 446, 109 N. W. 99, 6 L. R. A. [N. S.] 917; *In re Stadtmuller*, 96 N. Y. Supp. 1101, 110 App. Div. 76.)

"Irrespective of the duty of a husband to bury his deceased wife and the primary obligation to pay such expenses as between the husband and wife's estate, the necessary funeral expenses of a married woman is a proper charge against her estate, for which her executor or administrator, if paid by him, is entitled to credit on

his account. (*McClellan* v. *Filson*, 44 Ohio St. 184, 5 N. E. 861, 58 Am. Rep. 814.) On the other hand when the primary duty to bury his wife is considered as at common law to rest on the husband, it is held that where the executor of a wife's estate reimburses the husband for expenses incurred by him in this respect, though at the request of the executor, the executor is not entitled to credit therefor in his account especially where there is no proof that the husband did not have ample means to defray such expenses. (*Gallaway* v. *McPherson's Estate*, 67 Mich. 546, 35 N. W. 114, 11 Am. St. Rep. 596.)''

A careful consideration of the cases cited leads to the conclusion that we cannot simply choose between the holdings of different courts, but must construe our own statutes on the subject, and that but little assistance can be gotten from a review of the facts of cases in other jurisdictions and the holdings thereon, especially as many of the cases do not recite the statutes under which the decisions were rendered. Some of them, however, do, and these serve to illustrate the reason for the difference in the conclusions reached. For instance, the Iowa court (*In re Skillman, supra*) puts expenses of last illness on the same footing with funeral expenses because the statute does so, while the Rhode Island court (*Moulton* v. *Smith, supra*), under the statute of that State, declares that the expenses of the last illness of the wife is a debt of the husband which cannot be charged to the estate of the wife, because not within the statute providing for the payment of funeral expenses.

[3, 4] Prior to the enactment of our married women's statute, a married woman in this State could own no personal estate except an equitable, separate estate which was held strictly subject to the settlement, and there was nothing upon which the statutes relating to

funeral expenses could operate.    Since that enactment,
she holds her estate according to the terms of the stat-
ute creating it.    At common law the husband was
liable for the funeral expenses of his wife as for neces-
saries.    Since the enactment of the married women's
statute, the husband is still entitled to the services of
the wife, and is bound for her support.    *Richmond Ry.
Co.* v. *Bowles,* 92 Va. 738, 24 S. E. 388; *Atlantic & D. R.
Co.* v. *Ironmonger,* 95 Va. 626, 29 S. E. 319; *Norfolk R.,
etc., Co.* v. *Williar,* 104 Va. 679, 52 S. E. 380; *Mihalcoe*
v. *Holub,* 130 Va. 425, 429, 107 S. E. 704.

[5, 6]  There are several statutes in the State bearing
on the subject under consideration, but we wish to con-
fine the discussion, as far as possible, to the question
presented in the case in judgment, that is, can a hus-
band to whom credit has been given and who has paid
the expenses of his wife in her last illness and her fun-
eral expenses, have indemnity therefor out of his wife's
estate?    Counsel for the appellee has discussed the two
items of expense as if they stood on the same footing,
but they do not.    The expenses of the last illness are
necessaries for which the husband is still bound, and
for which the wife is not bound in the absence of any
contract or agreement on her part.    If she had recov-
ered, there could be no pretense for holding her in the
absence of any contract on her part, and it would be
absurd to say that if she died her estate would be liable.
The debt was his, not hers, and he recognized the fact
and paid it.    The statute giving preference to that class
of debts (Code, section 5390) applies to debts of the
decedent, not to debts for someone else, and this was
plainly a debt of the husband contracted in the lifetime
of his wife, and it is expressly declared (Code, section
5134) that the property of the wife shall not "be subject
to the debts and liabilities of the husband."    See also

*Moulton* v. *Smith*, 16 R. I. 126, 12 Atl. 891, 27 Am. St. Rep. 728; *Towery* v. *McGaw* (Ky.), 56 S. W. 727.

Section 5390 of the Code deals with the liability of the personal estate of a decedent in the hands of a personal representative and in effect declares that no part of such estate shall be applied to his debts until the costs of administration of his estate and his funeral expenses have been paid. Section 5275 relates to the distribution of the personal estate of an intestate and in effect declares that there shall be no distribution of such estate until after the costs of administration, funeral expenses and debts of the decedent have been paid. Section 5395 declares that real estate of an intestate "shall be assets for the payment of decedent's debts and all lawful demands against his estate in the order in which the personal estate of a decedent is directed to be applied."

At common law a married woman could neither contract nor be contracted with, nor sue nor be sued, but equity violated the laws of property, as between husband and wife, and allowed her to own property even in fee; and, as one of the incidents of such an estate was the power of alienation and liability for debts, and this might be destructive of the estate in the hands of one incapable of managing it, equity again interfered, and, by another violation of the laws of property, supported the validity of the prohibition against alienation or encumbrance. *Tullett* v. *Armstrong*, 4 My. & Cr. 377, 18 Eng. Ch. 405; *Nixon* v. *Rose*, 12 Gratt. (53 Va.) 425. It was entirely competent, therefore, for the legislature to remove the disability of married women in whole or in part, and to define her powers with reference to property of all kinds, to ascertain the rights of the husband, if any, therein, and the liability of the property to claims against the wife. This the legislature has done, and so

far as need be stated the rights, powers and responsibilities of a married woman, as they existed when Mrs. Stewart died, are set forth in the margin,* taken from Acts 1899-1900, page 1240.  The married woman's statute also declares how the estate of a married woman shall pass at her death.  "When a married woman, having title to any estate, dies intestate, as to the said estate, or any part thereof, it, or such part, shall pass according to the provisions of chapter two hundred and thirteen, subject to her debts, and to the curtesy of her husband, should he survive her."  Code, section 5138. This statute was passed many years after the statutes mentioned above relating to funeral expenses and, of course, would prevail if there is any conflict between them.  When we turn to chapter 213 we find it deals with two very distinct subjects, the descent of real estate and the distribution of personal property.  The reference then in section 5138 must be construed distributively, that is to say, when the wife's property consists of real estate it shall pass as real estate passes under that chapter, and when of personal property it passes as personal property passes in that chapter.  In the case in judgment the wife had no personal estate, but only the undivided half interest in the house and lot, and that passed under chapter 213, section 5264, to her father.  This section makes no mention of costs of administration, funeral expenses or debts, nor does it mention any surplus after the payment of these items as is

*"1.  *  *  *  a married woman shall have the right to acquire, hold, use, control, and dispose of property, as if she were unmarried, and such power of use, control and disposition shall apply to all property of a married woman heretofore or hereafter acquired: provided, however, that her husband shall be entitled to curtesy in her real estate when the common law requisites therefor exist, and he shall not be deprived thereof by her sole act; but the right to curtesy shall not entitle him to the possession or use, or to the rents, issues and profits of said real estate during the coverture, nor shall the property of the wife be subject to the debts or liabilities of the husband.
"2.  A married woman may contract and be contracted with, sue and be sued, in the same manner and with the same consequences as if she were unmarried, whether the right or liability asserted by or against her shall have accrued before or after the passage of this act.
"3.  A husband shall not be responsible for any contract, liability, or tort of his wife, whether the contract or liability was incurred or the tort was committed before or after marriage."

done in section 5273 of chapter 213, relating to the distribution of personal estate. Under section 5138 what passes is not a surplus but the whole of the estate of which the wife dies intestate. How does it pass? The statute says "subject to her debts." Now funeral expenses are not debts of a decedent. *Fitzhugh's Ex'rs* v. *Fitzhugh*, 11 Gratt. (52 Va.) 300, 62 Am. Dec. 653. Whether or not section 5395 making real estate assets for the payment of debts and lawful demands of a decedent applies to real estate of a married woman descended to her heir, in view of the language of section 5138, it is not necessary for us to decide at present, but it was entirely competent for the legislature to so declare, if it thought proper.

If we turn to the section quoted in the margin, which is now, with some modifications, section 5134 of the Code, we find that the husband cannot be deprived of his curtesy in his wife's real estate acquired or held under the statute, if the common law requisites therefor exist, but neither tenancy by curtesy initiate nor by the marital right "shall entitle him to the possession or use, or to the rents, issues and profits of said real estate during the coverture, nor shall the property of the wife be subject to the debts or liabilities of the husband." On the other hand, the husband is not responsible "for any contract, liability or tort of his wife." Each is exempt from the liabilities of the other.

We express no opinion as to the liability of the estate of Mrs. Stewart for her funeral expenses to the persons furnishing them, if they had asserted their claims against her estate, for that question is not before us. But there was a common law liability on her husband for these expenses, the credit was extended to him, and he paid the debt, and we are of opinion that he cannot recover back the amount from his wife's estate. The

debt was his, and to allow him now to be reimbursed from her estate would be to charge her estate with the payment of his debt in face of the statute which declares "nor shall the property of the wife be subject to the debts or liabilities of the husband." As said in *Smyley* v. *Reese*, 53 Ala. 89, 25 Am. Rep. 598, 601, "If it (the wife's estate) is charged with the wife's funeral expenses, to that extent it is charged with a debt for which the husband is legally liable, and he acquires an interest in the estate when it is indispensable to its existence that all liability for his debts, and all right or interest of his, shall be excluded. *Johnson's Adm'r* v. *Johnson*, 32 Ala. 637; *Lamb* v. *Bragg*, 8 Port. 73. The statute creating the separate estates of married women excludes all marital right of the husband, as known to the common law, and declares such estate 'is not subject to the payment of the debts of the husband.' R. C. section 2371. The husband has not an equity to charge this statutory estate, as he had not to charge the separate estate created by deed, will, or other instrument, with necessaries furnished to the wife or to her family. *Rogers* v. *Boyd*, 33 Ala. 175. When, therefore, the appellant paid the funeral expenses of his wife, he paid his own debt only, and is not entitled to introduce it as a credit in his settlement of administration of the wife's estate. Whether, if it appeared that the husband had not ability to bury the wife in a manner corresponding with her fortune, he should not be allowed to claim of her separate estate funeral expenses on the same ground that a parent may charge his child's estate with maintenance, is not a question presented by this record, and must not be regarded as affected by this decision."

For the reasons stated, we are of opinion that so much of the decree appealed from as directs the payment to the appellee, C. W. Stewart, of the sum of

$475.15 for the expenses of the last illness and burial of his wife, Minnie B. Stewart, is erroneous, and that the same be set aside and annulled, and that this cause be remanded to the Circuit Court of Smyth county for such decree as may be necessary not inconsistent with the foregoing opinion.

*Reversed.*

WEST, J., dissenting:

I find myself unable to concur in the majority opinion of Judge Burks in this case.

Only one question is to be decided: Is the separate estate of a deceased wife chargeable with her funeral expenses, hospital, nurse's and doctor's bills incurred during her last illness; and when paid by her husband can he prove the same as a debt against her estate?

Under the Virginia statute, a married woman has the right to acquire, hold, use, control and dispose of property as if she were unmarried, subject to her husband's right of curtesy in her real estate. She may also contract and be contracted with, sue and be sued, in the same manner and with the same consequences as if she were unmarried.

The statute, section 5390, Code of 1919, providing the order in which the assets of the decedent's estate in the hands of his personal representative shall be applied to the satisfaction of the demands against him, *after the payment of the funeral expenses and* charges of administration, also *gives a prior lien* on such assets for the claims of physicians, druggists, nurses, hospitals and sanitariums, for articles furnished and services rendered during the last illness of the decedent. The statute reads as follows:

"When the assets of the decedent in the hands of his

personal representative, after the payment of funeral expenses and charges of administration, are not sufficient for the satisfaction of all demands against him, they shall be applied:

"First: To the claims of physicians, not exceeding fifty dollars for services rendered during the last illness of the decedent; and accounts of druggists, not exceeding the same amount, for articles furnished during the same period; and claims of professional nurses, or other person rendering service as nurse to the decedent, at his request *or the request of some member of his immediate family*, not exceeding the same amount, for services rendered during the same period; and accounts of hospitals and sanitariums, not exceeding the same amount, for articles furnished and services rendered during the same period." (Italics supplied.)

It is a familiar rule of construction, supported by authority and reason, that common words are to be extended to all the objects which, in their usual acceptance, they describe and denote. The language of the statute, section 5390, *supra*, is so plain and unequivocal as not to be susceptible of more than one construction. It contains no exception and clearly contemplates and includes all decedents who die leaving assets, without regard to their race or sex, whether married or single. To hold that the statute does not apply to the estate of a married woman might, where the husband was hopelessly insolvent, leave her body upon the charity of some friend or the public, and even though she left a large estate, deprive her of a funeral and burial such as are usually accorded persons of her station and condition in life. Such a situation would offend a benevolent public sentiment.

The declaration in the majority opinion that because section 5264 of the Code, by which the undivided one-

half interest in the house and lot passed to Mrs. Stewart's father, makes no mention of costs of administration, funeral expenses or surplus after the payment of these items, what passes under section 5138 is not a surplus but the whole of the decedent's estate, "subject to her debts," cannot be sustained when these sections are construed, as they should be, in the light of sections 5273 and 5395, Code 1919.

Under section 5395, Code 1919, all real estate of *any person*, as to which he may die intestate, is made assets for the payment of the decedent's debts and *all lawful demands* against his estate, in the order in which the personal estate of a decedent is directed to be applied. There can be no question that this statute applies to the real estate of married women, as the term "*any person*" necessarily includes women. This section is in no way qualified by section 5138, Code 1919. And it cannot be said that the funeral expenses of a married woman are never a "lawful demand" against her estate.

The statute, section 5275, Code 1919, provides as follows: "When any person shall die intestate as to his personal estate, or any part thereof, the surplus    * * * *after the payment of funeral expenses, charges of administration and debts*, shall pass and be distributed to and among the same persons    *    *", &c. (Italics supplied.)

Section 5138 of chapter 207 provides that "When a married woman, having title to any estate, dies intestate, as to the said estate, or any part thereof, it, or such part, shall *pass according to the provisions of chapter 213*, subject to her debts and to the curtesy of her husband, should he survive her." (Italics supplied.) Chapter 213 contains section 5273, *supra*, which provides that the *surplus, after the payment of funeral expenses, charges of administration and debts*, shall pass to and be distributed among the heirs of the decedent. It

follows that section 5273 and section 5395, *supra*, supersede section 5138, to the extent that there can be no distribution of even the surplus of the estate, whether derived from the sale of personal or real property, until after the payment not only of the debts but also of the funeral expenses and charges of administration.

The married woman's act is invoked by the majority opinion to sustain the position that a married woman's estate cannot be required to reimburse her husband, for the amount expended by him in her funeral expenses, because it provides that the property of the wife shall "not be subject to the debts or liabilities of the husband. This act became a law on April 4, 1877, and was amended by an act approved March 7, 1900. Section 5390 was amended and re-enacted by an act approved December 12, 1903. Wherever there is any conflict between two statutes, the last enactment prevails.

In construing a statute the court should be alert to construe it in the light of new circumstances and conditions in the progress of the State and its laws. The provisions of section 5390 should not be construed in the light of the ancient common law by which a married woman could not contract, nor by the common law as modified by the courts of equity, but rather in the light of recent constitutional and legislative enactments by which she is given practically every personal and property right enjoyed by men. When so construed it seems to me clear, as will hereinafter appear, that under section 5390, *supra*, the estate of a married woman is liable for her funeral expenses even though under the common law rule the husband is still liable to the party actually providing a suitable burial for his wife. When her estate pays her funeral expenses to the husband it is in discharge of a liability against her estate and not of his debt or liability.

The liability of a married woman's estate for her burial expenses does not rest upon contract, but upon an obligation created by statute based upon necessity and made a charge upon the estate, just as the necessary expenses of administration are made a charge thereon. The burial of the dead is a matter of public health and public necessity.

A husband is bound to support his wife. This is his legal duty, independent of any separate estate which she may possess. *Mihalcoe* v. *Holub*, 130 Va. 429, 107 S. E. 704. To parties who furnish attention to a wife during her last illness, and provide suitable burial for her, the husband is still liable, as at common law, notwithstanding the married woman's act, for the services rendered in that behalf. But the statute, section 5390, creates a first lien on the estate of the wife for the payment of her funeral expenses, regardless of who incurred these expenses. Section 5273, *supra*, does not authorize the court, or the personal representative, to pay to the heirs of the decedent the money necessary to defray the funeral expenses, charges of administration and debts, nor does it pass to the heirs under the statute; and the husband having paid the same, may recover the amount from her estate. Briefly expressed, the parties furnishing the services in question may look to the wife's estate or the husband, or both, for payment of the amounts due them. As between the husband and her distributees and heirs, who claim the wife's separate estate at her death, her separate estate is primarily liable.

The question we are deciding is of first impression in Virginia, but has been passed upon in several other States. In those jurisdictions the authorities are in conflict. The better reason and weight of authority are in accord with the trend of recent legislation and with the views I have herein expressed.

The majority opinion admits that there is authority in several jurisdictions to support my contention, that as between the estate of a married woman and her husband, the liability of her estate for her burial expenses is primary, though it is still his duty to see that his wife is buried, and that if he pays her funeral expenses he is entitled to recover his reasonable expenditures, as in other cases when a person has paid, in pursuance of a legal duty, which, as between himself and another, that other was bound to pay. Notwithstanding this admission, the opinion follows another line of authorities and, harking back to the rigid rules of the common law, places a construction upon section 5390, which, as it seems to me, destroys the true intent and meaning thereof.

In *Bowen* v. *Daugherty, et al.*, 168 N. C. 242, 84 S. E. 265, Ann. Cas. 1917B, 1161, relied on with so much confidence by the appellant, involving the payment of the wife's funeral and burial expenses, tombstone, doctor's bills and nursing during last illness, Judge Hoke, speaking for the majority of the court, said: "We are aware of a number of decisions, and *by courts of eminent ability and learning, to the effect that the estate of the deceased wife is primarily liable on claims of this kind* by reason of their statutes as to the proper administration of estates, and which provide, in differing terms, that debts for funeral expenses, medical bills, and services within a stated period, etc., shall be paid," etc., out of the wife's estate; citing the cases relied on in this opinion. Judge Hoke then adds: "It may be that, *owing to special phraseology of these statutes, a position of that kind can be upheld*, but, so far as our own enactment is concerned (Revisal 1905, section 87), we do not hesitate to hold that the statute is only designed to recognize priorities and to establish the order of payment as between claimants who have valid debts against the estate." (Italics supplied.)

The North Carolina statute, section 87, *supra*, reads as follows:

"87.  *Order of payment.*—The debts of the decedent must be paid in the following order:

"First class.   Debts which by law have a specific lien on property to an amount not exceeding the value of such property.

"Second class.   Funeral expenses.

"Third class.   Taxes assessed on the estate of the deceased previous to his death.

"Fourth class.   Dues to the United States and to the State of North Carolina.

"Fifth class.   Judgments of any court of competent jurisdiction within this State, docketed and in force, to the extent to which they are a lien on the property of the deceased at his death.

"Sixth class.   Wages due to any domestic servant or mechanical or agricultural laborer employed by the deceased, which claim for wages shall not extend to a period of more than one year next preceding the death; or if such servant or laborer was employed for the year current at the decease, then from the time of such employment; for medical services within the twelve months preceding the decease.

"Seventh class.   All other debts and demands."

North Carolina has no statute similar to section 5273, *supra*.   Her statute on the distribution of personal estates of decedents (Revisal 1905, section 132), simply provides that "The surplus of the estate, in case of intestacy, shall be distributed in the following manner," etc., without stating of what the surplus consists.   Had the North Carolina statutes contained the identical language of the Virginia statutes, *supra*, I think it can be inferred that Judge Hoke's conclusions would have been in accord with the views expressed in this opinion.

Some of the cases relied on by the plaintiffs in error are less in point than *Bowen* v. *Daugherty, supra,* and in view of the language of the Virginia statute, to none of the cases relied on by them should we attach much weight in disposing of the questions involved in the instant case.

In *Schneider* v. *Estate of Anna Selma Breier*, 129 Wis. 446, 109 N. W. 99, 6 L. R. A. (N. S.) 917, the Wisconsin Supreme Court says: "It seems well settled that estates of deceased persons are liable for funeral expenses such as are usually adopted for persons of like rank and condition in society (2 Woerner's Am. Law of Administration, sections 357, 359; Schouler Ex'ors, section 421), and this rule applies to married women leaving separate estates to be administered. The liability of the estate in such cases does not rest upon contract relation, but upon a charge which the law imposes upon the estate." A suitable tombstone for the grave of the deceased would be regarded as a part of the burial expenses in such cases.

In 21 Cyc. at page 449, we find the law stated thus: "The weight of authority, nevertheless, under the married woman's acts, holds that the estate of the wife who dies leaving separate property is primarily liable for her funeral expenses and that the husband, having paid the same, may recover from such estate." (Citing cases from Ohio, Mass., N. Y., R. I., and Canada.)

In *Morissey* v. *Mulhern*, 168 Mass. 412, 47 N. E. 407, the Supreme Court of Massachusetts says: "The estate of a married woman who died leaving property is primarily liable for her funeral expenses, and her husband who paid them may recover them from her executor."

In *In re Stadtmuller*, 96 N. Y. Supp. 1101, 110 App. Div. 76, the New York court declared the law to be that "The separate estate of a wife is liable for her fune-

ral expenses, to the estate of her husband who died after her, though he assumed and paid them without expectation of reimbursement from her estate, he neither having done any positive act indicating an intent to make a gift of the money to her estate, nor having actually released her estate, and he having died before his claim against her estate was barred.''

In the case of *Constantinides* v. *Walsh*, 146 Mass. 281, 15 N. E. 631, 4 Am. St. Rep. 311, the Supreme Court of Massachusetts says: ''The funeral expenses of the decedent were a preferred charge upon her estate. Under these statutes (those making such debts preferred charges) and those establishing the independent position of married women with regard to their property, we think that, as between the estate of a married woman leaving property and her husband, the liability of the estate must be regarded as primary, and that it would be unreasonable to charge the husband for the funeral expenses, in all events, as necessaries irrespective of any fault on his part. If then it was still, as formerly, the plaintiff's legal duty to see that his wife was buried, but her estate was primarily liable, he is entitled to recover his reasonable expenditures as in other cases when a person has paid in pursuance of a legal duty what, as between himself and another, that other was bound to pay.   *   *   *   If it were not the plaintiff's legal duty to do what he did, nevertheless, we are of the opinion that he stood on no worse ground than a stranger. Undoubtedly he (a stranger) could recover against her estate. If so, the husband can.''

In *Estate of Skillman*, 146 Iowa 601, 125 N. W. 343, 140 Am. St. Rep. 295, a case very similar to the case in judgment, the Iowa Supreme Court declared the law as follows: ''The statute quoted (making such expenses charges on the estate of the deceased) makes it obliga-

tory on executors and administrators of estates having sufficient means to meet both the charges of the last sickness and the funeral of a deceased person. Neither necessarily depends on the contract of the deceased or others, but may rest on this statute. While the expenses of the last sickness differ from those of funeral in that they are rendered during the life of the person on whose estate they are made a charge, the necessity of their rendition is similar to the latter, and the law authorizing their payment may be justified on like principles. The legislative design in enacting the statute was to secure to every person care in his last sickness and appropriate burial by declaring the charges therefor preferred claims and exacting their payment as soon as funds enough to satisfy them come into the possession of the personal representative. It is mandatory in form. It contains no discrimination as to creditors to whom charges may be owing. And the duty to pay is declared independently of any obligation which may exist on the part of others. Its language obviates the inference, otherwise to be drawn, that it was intended merely to declare a preference as between claims against the estate. We are of the opinion that the legislative intent was to impose on the estate of every deceased person a primary liability for the charges of the last sickness and funeral. If so, the obligation of either husband or wife is secondary thereto in character, and in the event of payment by either, such charges may be established as claims against the estate of the deceased. This construction is not only reasonable, but is well calculated to protect the property of the one against the unseemly efforts of the heirs of the other to evade the satisfaction of the reasonable charges of the last sickness and funeral from the estate of the decedent under whom they take."

In *In re Stadtmuller, supra,* the court also made this statement: "A short time after the death of his wife, Mr. Lee sent for several parties who had claims, and requested them to present their bills. They were paid on the 15th of August, 1902. George Lee paid the physician who attended his wife during her last illness the sum of $248.50, one Maxiner, for flowers furnished at her funeral, $80.50, and one Collier, the undertaker who had charge of her funeral, $281.00. The administratrix with the will annexed of George Lee claims to recover these sums from the estate of his wife. The surrogate rejected these claims, and the administratrix of the husband's estate appeals from the decree. That the items paid are legitimate funeral expenses cannot be doubted. It is equally clear that where a wife leaves a separate estate, although a surviving husband is under a legal obligation to bury the body of his wife, her estate is liable to the charge. The point made by respondents that because George Lee assumed these claims, without expectation of reimbursement from the estate of his deceased wife, can have no force. Unless he did some positive act indicative of an intent to make a gift of such moneys to the estate, or actually released his wife's estate, no legal impediment existed to prevent his claiming reimbursement."

The rule of the common law requiring the husband to maintain and support his wife, independent of any separate estate possessed by her, was for her comfort and protection, and I have said nothing which relieves the husband of this duty, at the wife's expense; for, at her death, the question, in its last analysis, is not whether the wife shall pay a debt which her husband ought to pay, but whether the court or the personal representative shall distribute among her heirs, as surplus, money which the Virginia statute says shall be used in the pay-

ment of her funeral expenses and charges of administration.

For the foregoing reasons, so much of the decree complained of as directs the payment to the appellee, C. W. Stewart, of the sum of $245.00 for the expenses of the burial of his wife, Minnie B. Stewart, in my opinion is plainly right and should be affirmed.

PRENTIS, J., concurs in this dissent.